UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ZELTIQ AESTHETICS, INC.,

    Plaintiff,

v.                                          Case No:   2:16-cv-792-FtM-99MRM

POBRA ENTERPRISES, LLC,
NAPLES POBRA LLC, JOHN
BRANNELLY, MICHAEL A. POKA,
ANDREA BASILE, JOHN DOE
CORPORATIONS 1-50, JOHN DOE
ENTITIES 1-50 and JOHN DOES 1-
50,

    Defendants.
_____/

**<u>ORDER</u>**[1]

This matter comes before the Court on Defendants Pobra Enterprises LLC, Naples Pobra LLC, Andrea Basile, Michael A. Poka, and John Brannelly's Motion for Partial Dismissal of Plaintiff's Complaint, and in the Alternative, Motion for More Definite Statement (Doc. #19) filed on December 19, 2016.  Plaintiff Zeltiq Aesthetics, Inc. (Plaintiff or Zeltiq) filed a response in opposition (Doc. #29) on January 3, 2017.  For the reasons set forth below, the motion is granted in part and denied in part with leave to amend.

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.  These hyperlinks are provided only for users' convenience.  Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.  By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites.  Likewise, the Court has no agreements with any of these third parties or their websites.  The Court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

**I.      Factual Background**

On October 25, 2016, Zeltiq filed a five-count Complaint for Damages and Injunctive Relief against Defendants for trademark infringement, false advertising, false designation of origin, and unfair competition. (Doc. #1). Counts I through IV are alleged against all Defendants and Count V alleges that the individual Defendants (Brannelly, Poka, and Basile) aided the corporate defendants (Pobra Enterprises LLC and Naples Pobra LLC) in the wrongful conduct.

Accepting them as true, the allegations in the Complaint are : Zeltiq is a medical technology company that owns and/or is the exclusive licensee of the technology underlying the process known as Cryolipolysis®, a non-invasive, patented, clinically-proven procedure which involves freezing fat cells without damage to the skin. (Doc. #1, ¶ 15). The technology underlying the Cryolipolysis process has been exclusively licensed to Zeltiq and Cryolipolysis has been approved by the FDA for use on certain areas of the body. (*Id.* at ¶¶ 18-19). Zeltiq markets its Cryolipolysis device and system under its registered CoolSculpting®, Cryolipolysis®, and Showflake Design marks, which it distributes exclusively to authorized medical professionals who receive training on proper use of the device in compliance with FDA clearance. (*Id.* at ¶ 23). Zeltiq alleges that it owns these U.S. trademark registrations, which Defendants violated:

| MARK | REG. NO. | GOODS/SERVICES |
|---|---|---|
| ZELTIQ | 3,897,576 | Medical devices, namely, apparatus for tissue contouring and cellulite improvement; medical services, namely, procedures and services in the nature of tissue contouring and cellulite improvement. |
| COOLSCULPTING | 3,921,045 | Medical services, namely, procedures and services in the nature of tissue contouring and cellulite improvement. |
| COOLSCULPTING | 3,957,850 | Medical devices, namely, apparatus for tissue cooling, contouring and cellulite improvement; medical devices used to destroy fat cells. |
| CRYOLIPOLYSIS (Supplemental Register) | 3,987,356 | Medical services, including diagnostic and treatment services related to the destruction of fat cells in human beings; medical consultations related to the destruction of fat cells in human beings. |
| (the "Snowflake Design") | 4,172,721 | Medical devices, namely, apparatus for tissue cooling, contouring and cellulite improvement; medical devices used to destroy fat cells; Medical services, namely, procedures and services in the nature of tissue cooling, contouring and cellulite improvement. |

(*Id.* at ¶ 25). Zeltiq alleges that the marks are widely recognized in the United States and worldwide as the identifier of Zeltiq and its high quality goods and services. (*Id.* at ¶ 26).

3

Following the commercial success of its CoolSculpting product, Zeltiq has faced an onslaught of unfair competition from counterfeit "CoolSculpting" and "Cryolipolysis" devices, typically originating overseas and purchased via the Internet. (Doc. #1, ¶ 31). These devices and the services performed are promoted using Zeltiq's intellectual property, and falsely touted as providing the same treatments as Zeltiq's CoolSculpting device. (*Id.* at ¶ 33). Consumers who purchase these treatments erroneously believe they are receiving treatments administered with a Zeltiq device. (*Id.* at ¶ 34).

On information and belief, Defendants operate a chain of facilities throughout Central Florida that offer medical services and procedures. (Doc. #1, ¶ 35). Defendants advertise that they offer "Cryolipolysis" and Swan Cryo Freeze" treatments, advertising using Zeltiq's registered trademarks. (*Id.* at ¶¶ 36-37, Exh. A). Defendants claim that their "Cryolipolysis" device is "safe and effective" and available "exclusively at" their locations. (*Id.* at ¶ 38). Defendants also advertise their services via website, social media platforms, print media, radio, and on local television programs. (*Id.* at ¶ 39). Plaintiff alleges that employees at Defendants' facilities make statements and representations to patients that it's "Cryolipolysis" and "Swan Cryo Freeze" device and treatments are the same as or the clinical equivalent of Zeltiq's CoolSculpting Cryolipolysis treatment, including representations they offer "the same technology" as Zeltiq and that they are FDA approved, all of which is untrue. (*Id.* at ¶ 42).

Plaintiff avers that Defendants' use of the "Cryolipolysis" and "Swan Cryo Freeze" designations are identical in meaning and overall commercial impression and confusingly similar to Zeltiq's federally-registered marks. (Doc. #1, ¶ 47). On information and belief, actual consumer confusion is occurring where Zeltiq and Zeltiq's Authorized Providers

4

are receiving customer inquiries about Defendants' services. (*Id.* at ¶ 51). Plaintiff states that Defendants' statements have deceived and/or can deceive a substantial segment of customers, who are likely to believe Defendants' services are the same as or the clinical equivalent of Zeltiq's CoolSculpting device and treatment. (*Id.* at ¶ 51). These actions are injuring Zeltiq as they diminish the value of Zeltiq's reputation and good will that it has cultivated as the sole provider of FDA-cleared Cryolipolysis services. (*Id.* at ¶ 54).

On information and belief, Defendants' devices utilize Zeltiq's registered trademarks in the user manuals, on the devices themselves and on the display screens. (Doc. #1, ¶ 58). Because Defendants are not trained on proper administrative of Cryolipolysis treatments, it is likely to lead to unsatisfactory results or injury, and damage to the good will associated with Zeltiq's brand and reputation as the sole provider of devices cleared by the FDA for cold body based contouring. (*Id.* at ¶ 60).

Defendants move for partial dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6); specifically, Defendants argue that Plaintiff's claims should be dismissed to the extent they are based on Plaintiff's alleged trademarks for: Zeltiq, CoolSculpting (both registrations), and the "Snowflake Design"[2] because as a matter of law there is no likelihood of confusion between the terms Defendants allegedly used and Plaintiff's dissimilar marks. Defendants also move to dismiss the aiding and abetting count pled against the individual defendants for failure to comply with Rules 8(a)(2) and 10(b) or for a more definite statement under Federal Rule of Civil Procedure 12(e), because the pleading is "shotgun."

---

[2] Plaintiff does not move to dismiss allegations regarding the "Cryolipolysis" trademark.

## II. Trademark Law Claims

When deciding a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiffs. *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). Under Rule 8 of the Federal Rules of Civil Procedure, stating a claim upon which relief may be granted requires that enough factual matter is pled to make relief plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556, 561–63 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957)). Although detailed factual allegations are not required, a plaintiff's obligation to provide the "grounds" of his "entitlement" to relief requires more than labels, conclusions, and a formulaic recitation of the cause of action's elements. *Id.* at 561–63. Thus, a complaint must state more than an unadorned, "the-defendant-unlawfully-harmed-me accusation." *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1268 (11th Cir. 2009) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Additionally, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of the allegations. *Id.* (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005)). Accordingly, the facts as pled must state a claim for relief that is plausible on the face of the pleading. *Id.* (citing *Iqbal*, 556 U.S. at 678).

"To prevail on a claim of trademark infringement ..., plaintiffs must establish: (1) that they possess a valid mark, (2) that the defendants used the mark, (3) that the defendants' use of the mark occurred 'in commerce,' (4) that the defendants used the mark 'in connection with the sale ... or advertising of any goods,' and (5) that the defendants used the mark in a manner likely to confuse consumers." *North Am. Med.*

*Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008). As to the last element of trademark infringement, "[s]even factors are relevant when determining whether a likelihood of confusion exists: (1) the strength of the plaintiff's mark, (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods; (5) the similarity of advertising methods; (6) the defendant's intent ...; and (7) actual confusion." *Id.* at 1220 (citing *Alliance Metals, Inc. of Atlanta v. Hinely Indus., Inc.*, 222 F.3d 895, 907 (11th Cir. 2000)). "The extent to which two marks are confusingly similar cannot be assessed without considering all seven factors to ensure that the determination is made in light of the totality of the circumstances." *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1488 (11th Cir. 1987).

Here, Plaintiff has stated plausible claims against Defendants for trademark infringement, including a plausible claim for likelihood of confusion, which the Court accepts as true and takes in a light most favorable to Plaintiff in deciding a Rule 12(b)(6) motion to dismiss. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court will not determine at the motion to dismiss stage likelihood of confusion, as this requires a fact-intensive analysis of seven factors beyond the plausible allegations in the Complaint.

### III. Aiding and Abetting (Count V)

Next, Defendants move to dismiss the aiding and abetting count against the individual Defendants because it is supported only by conclusory allegations and is indefinite because it incorporates every other count in the Complaint. *See* Doc. #1, ¶ 86 ("Zeltiq incorporates by reference as if fully stated herein the allegations contained in paragraphs 1 through 85."). The Court agrees.

A shotgun complaint "contains several counts, each one incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts ... contain irrelevant factual allegations and legal conclusions." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). The Eleventh Circuit Court of Appeals recently delineated the "four rough types or categories of shotgun pleadings" that have been filed since 1985:

> The most common type — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple Defendants without specifying which of the Defendants are responsible for which acts or omissions, or which of the Defendants the claim is brought against.

*Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The Eleventh Circuit has also noted that, "[w]hile plaintiffs have the responsibility of drafting complaints [that do not constitute shotgun pleadings], defendants are not without a duty of their own in this area. . . . [A] defendant faced with a shotgun pleading should move the court, pursuant to Rule 12(e), to require the plaintiff to file a more definite statement." *Id.* at 1321 n.10.

Here, Count V is alleged in the most typical and common shotgun manner by adopting the allegations of all preceding counts and is a combination of the entire Complaint. The Court agrees that the Complaint does not state which allegations of fact against which Defendants are intended to support its aiding and abetting count, making

it virtually impossible for Defendants to answer.  This violates Federal Rule of Civil Procedure 8 and 10 and dismissal is warranted without prejudice to filing an Amended Complaint that specifies the relevant factual allegations in support and the offending conduct of each Defendant.

## IV. Fictitious Defendants

Finally, the Court notes that "[a]s a general matter, fictitious-party pleading is not permitted in federal court."  *Richardson v. Johnson,* 598 F.3d 734, 738 (11th Cir. 2010). The Court will allow Plaintiff some leeway in identifying the fictitious defendants as a scheduling order has just been entered and discovery has only likely just begun.  But the Court would not be inclined to allow Plaintiff until the deadline to amend pleadings and add parties (August 2, 2017) to do so.  *See* Doc. #34.

Accordingly, it is now **ORDERED:**

1. Defendants Pobra Enterprises LLC, Naples Pobra LLC, Andrea Basile, Michael A. Poka, and John Brannelly's Motion for Partial Dismissal of Plaintiff's Complaint, and in the Alternative, Motion for More Definite Statement (Doc. #19) is **GRANTED in part and DENIED in part** to the extent that Count V is dismissed without prejudice; the motion is otherwise denied.

2. Defendants have up to and including **February 2, 2017** to file an Amended Complaint in accordance with this Order.

**DONE** and **ORDERED** in Fort Myers, Florida this 19th day of January, 2017.

*[signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record